Daniel A. Schnapp
Ernest Edward Badway
Catherine A. Savio
Fox Rothschild LLP
101 Avenue, 16th Fl.
New York, New York 10178
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM AUSTIN LEWIS, IV, LEWIS ASSET MANAGEMENT, LEWIS OPPORTUNITY FUND, LP, AND WILLIAM A. LEWIS DEFINED PENSION PLAN AND TRUST,<br><br>    Plaintiffs,<br><br>    – against –<br><br>CALMARE THERAPEUTICS, INC., CONRAD F. MIR, PETER BRENNAN, RUSTIN HOWARD, AND CARL O'CONNELL,<br><br>    Defendants. | **ECF Case**<br><br>**Case No.  17-cv-4297**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff William Austin Lewis, IV ("Plaintiff" or "Lewis"), Lewis Asset Management ("Lewis Asset"), Lewis Opportunity Fund LP ("Lewis Opportunity Fund") and William A. Lewis Defined Pension Plan and Trust ("Lewis Defined Pension Plan and Trust") (collectively, "Plaintiffs") by and through their attorneys, Fox Rothschild LLP, as and for their Complaint against Defendants Conrad F. Mir ("Mir"), Peter Brennan ("Brennan"), Rustin Howard ("Howard"), Carl O'Connell ("O'Connell") (collectively with Mir, the "Individual Defendants") and Calmare Therapeutics, Inc. ("Calmare" or the "Company"), allege as follows:

## INTRODUCTION

1.    This action seeks to recover millions of dollars of damages caused by Defendants' improper and illegal conduct including, among other things, violations of federal securities laws.

Defendants disseminated to the investing public, including Plaintiffs, false and misleading statements concerning the financial status and the contractual relationships of Calmare. These statements were made to conceal Defendants' egregious mismanagement of the Company, corporate waste, and self-interested transactions.

2.      Defendants' publicly traded business competes in the highly sophisticated and highly regulated medical technology industry. Moreover, Defendants are in the business of developing a potentially life-changing treatment for people suffering from chronic neuropathic nerve pain. In such an environment, it is unacceptable that Defendants would mismanage the Company to the extent that they have, and fail to employ appropriate due care in managing the affairs of the Company. It is indefensible that, as set forth in detail herein, Defendants would engage in a fraudulent scheme to cover-up their failure to perform the duties and obligations they owed to the Company and Plaintiffs, as shareholders in the Company.

## JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over this action as it arises under the Securities Exchange Act of 1934, 15 U.S.C. § 78(a), *et seq.* ("Exchange Act"). Furthermore, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over all other claims not asserted under the Exchange Act.

4.       Pursuant to 28 U.S.C. § 1332 this Court has subject matter jurisdiction over this action as there is complete diversity of citizenship between the parties and because the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

5.      Defendants are subject to jurisdiction here, because, among other reasons, they do business in the State of New York and Defendants transact and solicit business in the State of New York.

6.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

**THE PARTIES**

7.      Plaintiff Lewis is an investor with a focus on investing in small technology companies.  Lewis is a shareholder in Calmare.

8.      Plaintiff Lewis Asset Management is an investment company wholly owned by Lewis.

9.      Plaintiff Lewis Opportunity Fund is an investment company managed by Lewis Asset Management. Lewis holds a majority interest in Lewis Opportunity Fund.  Lewis Opportunity Fund is a shareholder in Calmare.

10.     Plaintiff Lewis Defined Pension Plan and Trust is an investment company wholly owned by Lewis. Lewis Defined Pension Plan and Trust is a shareholder in Calmare.

11.     Defendant Mir is the President, Chief Executive Officer, and a Director of Calmare. Upon information and belief, Mir is an individual residing at 19 New Brier Lane, Clifton, New Jersey 07012.

12.     Defendant Brennan is the Chairman of the Board of Directors of Calmare, Chairman of the Audit Committee, member of the Compensation Committee and member of the Nominating and Corporate Governance Committee at Calmare.

13.     Defendant Howard is a Director, Chairman of the Nominating and Corporate Governance Committee and member of the Audit Committee of Calmare and the former Chairman of the Board of Directors of Calmare.

14.     Defendant O'Connell is a Director, Chairman of the Compensation Committee and member of the Nominating and Corporate Governance Committee on the Board of Directors of Calmare and the former Chief Executive Officer of Calmare.

15.     Defendant Calmare is a Delaware Corporation with a principal place of business of 1375 Kings Highway East, Fairfield Connecticut, 06824.

16.     Calmare is a public company that offers stock to employees and the public and regulated by the United States Securities Exchange Commission ("SEC"). Calmare's stock ticker symbol is QTCQB: CTTC.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTIONS

17.     Lewis is an investor, who has been specifically focused on investing in small technology companies, for over two decades.

18.     According to public filings, Calmare is a medical investment company that develops and commercializes technologies designed to treat chronic neuropathic pain and wound care affliction patients.

19.     Calmare's medical device is the world's first and only non-invasive and non-addictive technology that can successful treat chronic, neuropathic pain (the "Device").

20.     Chronic, neuropathic pain, commonly referred to as "phantom pain," is a condition that ordinarily effects individuals who have suffered a traumatic loss of a limb, such as wounded veterans.

21.     This condition occurs when an arm or a leg has been lost due to injury or illness, but the brain still receives pain messages from the nerves that originally carried impulses from the missing limb. Those nerves continue to misfire, after the loss of the limb, and cause chronic pain.

22.     The Company holds a United States Food & Drug Administration ("FDA") 510k clearance designation (K081255) on the Device, which grants it the exclusive right to sell, market, research, and develop the Device in the United States.

**A.     Plaintiffs' Initial Investment in the Company**

23.     In 2014, Lewis learned of Calmare and became interested in investing in the Company.

24.     In August 2014, Lewis met with Defendant Mir and a physician who had purchased a Device from the Company.

25.     At the August 2014 meeting, Lewis observed the physician successfully utilize the Device to treat patients.

26.     Mir explained how the Device operated and described the Company.

27.     Mir represented that he had significant contacts in the military due to his military background, and that the Company was interested in gaining contracts with the United States military for the Device. These representations were knowingly false when made.

28.     Following the meeting, Mir solicited Lewis to invest $50,000 in the Company. In reliance upon Mir's representation regarding the Company's financial status and the likelihood of the Company gaining contracts with the United States military for the Device, Lewis provided such investment under an Original Discount Convertible Note ("OID") structure that was created by Mir.

29.     Later in 2014, Mir introduced Lewis to Dr. Stephen J. D'Amato, a retired physician who had been the head of the emergency room at a hospital in Worcester, Massachusetts for over thirty years. After learning about the Device, Dr. D'Amato came out of retirement in order to pursue treating patients with the Device.

30.     Mir represented that Dr. D'Amato had purchased ten (10) devices from the Company.

**B.      Plaintiffs' Further Investments in the Company**

31.     Plaintiffs and the Company entered into various note purchase agreements (the "Note Agreements") pursuant to which Plaintiffs purchased a series of promissory notes convertible into shares of the Company's common stock.

32.     Throughout the time period that Plaintiffs invested in the Company, Defendants repeatedly represented to Plaintiffs that the Company was pursuing profitable government contracts, that the Company was making purchases in order to develop regular income streams, and that the Company was developing a second stage Device. These representations were knowingly false when made. Plaintiffs relied upon these representations when initially investing in the Company, and when investing all subsequent funds in the Company.

33.     As Lewis perceived the Company was growing closer to eventual success, from August 2014, through December 2015, Plaintiffs made a series of significant investments in the Company through his various investment vehicles.

34.     In total, Plaintiffs' investment in the Company amounts to $1,958,825.00, not including interest.

35.     Plaintiffs made the following investments in the Company:

| Date | Convertible Debt | Warrants | Investor |
|------|------------------|----------|----------|
| August 24, 2014 | $58,824.00 | 294,120 | W. Austin Lewis IV |
| September 11, 2014 | $58,824.00 | 294,120 | W. Austin Lewis IV |
| October 3, 2014 | $117,647.00 | 588,235 | W. Austin Lewis IV |
| November 7, 2014 | $117,647.00 | 588,235 | W. Austin Lewis IV |

| January 30, 2015 | $117,647.00 | 588,235 | W. Austin Lewis IV |
| February 26, 2015 | $105,882.00 | 529,410 | Lewis Defined Pension Plan and Trust |
| April 21, 2015 | $176,472.00 | 882,360 | Lewis Defined Pension Plan and Trust |
| May 15, 2015 | $29,412.00 | 147,060 | W. Austin Lewis IV |
| July 10, 2015 | $705,882.00 | 3,529,410 | Lewis Opportunity Fund |
| December 22, 2015 | $470,588.00 | 2,352,940 | Lewis Opportunity Fund |

36.     Despite Plaintiffs' significant investment in the Company, Plaintiffs were prevented from having any day-to-day involvement with the Company and was not privy to any inside information. In fact, when Lewis attempted to communicate with the Board of Directors his efforts were largely rebuffed.

37.     As a result of the terms of the Note Agreements, and the Company's mismanagement, the Note Agreements expired and are currently in default.

38.     On October 25, 2016, Lewis emailed Mir a breakdown of Plaintiffs' investments in Calmare and requested an agreement in order to roll over Plaintiffs' investments in the Company.

39.     Plaintiff made Defendant Brennan, the acting Chairman of the Board of Directors, aware that Plaintiffs' Note Agreements had not been renewed and that Lewis had received a letter from the auditor regarding such nonrenewal.

40.     None of the Individual Defendants took any action to renew the Note Agreements representing Plaintiffs' significant investment in the Company.

41.     The Company has failed to provide Plaintiffs with the requested agreement despite Plaintiffs' repeated requests and demands for such an agreement, and as such, the Note Agreements are currently in default.

42.     Plaintiffs invested significant funds in the Company with the expectation that the funds were going to be used to improve the functioning of the Company, pay off existing debts, and develop a second-generation Device.

43.     Plaintiffs' investments, however, were improperly used to pay personal and Company expenses.

44.     Included in such Company expenses are the expenses of the Board of Directors, including the Individual Defendants, as well as the salary of Mir.

**C.      Specific Examples of Defendants' Breach of Fiduciary Duties, Corporate Waste and Company Mismanagement**

45.     The Individual Defendants, as Chief Executive Officer, President, Chairman of the Board, and Directors on the Board of the Company all owe duties of loyalty and care to Plaintiffs, as shareholders in the Company.

46.     The Individual Defendants have failed to fulfill their fiduciary obligations and have instead undertaken in a pattern of self-dealing, abuse and oppression, resulting in significant harm to the Company, as well as Plaintiffs' interests in the Company, as fully detailed below.

47.     The Board of Directors selected Mir to act as Chief Executive Officer of the Company, without conducting a background check on Mir, and without searching for any other qualified individual to take the position.

48.     In fact, if the Board of Directors had run a preliminary background search on Mir, the Board would have discovered that Mir had been personally sued no less than twelve (12) times for failure to pay financial obligations.

49.     Despite the fact that Lewis has consistently brought issues with regard to the operation of the Company to the attention of the Board of Directors, as well as suggestions as to how the Company may improve such operations, the Board of Directors has failed to take action with regard to any of Lewis' suggestions or concerns, and the Company has consistently operated at a loss throughout its existence.

### 1.     Defendants' Failure to Properly Market and Sell the Device

50.     Calmare has failed to hire a large enough sales force to effectively market and sell the Device.

51.     Calmare's entire marketing and sales structure consists of a senior sales person who travels to hospitals with a nurse to demonstrate how the Device is used.

52.     The majority of Calmare's sales employees, as well as the nurse hired by the Company, quit because the Company failed to pay their commissions and/or salaries.

53.     Dr. D'Amato, in Rhode Island, and a Dr. Norman Black, in Chicago, are currently utilizing the Device.

54.     Dr. D'Amato has successfully treated over 3000 patients from across the world with the Device.

55.     Part of Plaintiffs' investment in the Company was earmarked to purchase the practices of Drs. D'Amato and Black in order to achieve a recurring revenue strategy. Such purchases never occurred.

56.     The Individual Defendants and specifically Mir, have repeatedly caused the Company to enter into numerous contracts and consulting agreements pursuant to which the Company expended exorbitant amounts of money, and none of which have produced any returns for the Company.

57.     On one occasion, the Company expended a substantial sum in order to attend an industry conference to market and sell the Device. The expenditure resulted in no sales of the Device.

58.     Despite the extraordinary success in treating patients throughout the world suffering from a disease previously considered incurable, Calmare has continuously operated on a loss throughout the relevant time-period.

59.     Despite significant investments provided by Plaintiffs, the Company has barely been consistently able to make payroll.

60.     On one instance, Mir knowingly distributed payroll despite a deficiency in the Company's account, causing the Company to incur overdraft fees.

61.     The Company's credit card has been canceled by the participating bank due to lack of payment, specifically resulting from a lack of oversight and mismanagement on the part of the Individual Defendants.

62.     The Company's poor performance is a direct result of the mismanagement of Mir as Chief Executive Officer of the Company and the Board of Directors.

    2.     **Defendants' Payments of Salary to the Board of Directors and Chief Executive Officer**

63.     The Company, despite having limited cash reserves, and without corporate governance, upon information and belief, continues to pay the salary of the Board of Directors at an inflated price.

64.     Further, the Company, despite having limited cash reserves, without corporate governance, contrary to the advice of qualified individuals, and despite Mir's utter failure to adequately perform as Chief Executive Officer throughout his tenure, entered into a fix term contract with Mir as Chief Executive Officer obligating the Company to pay Mir an inflated salary over a period of years, regardless of Mir's performance as Chief Executive Officer, or lack thereof.

65.      This activity has all taken place at a time when operations of the Company are constrained with limited financial resources and the Company struggled to meet pay roll.

66.     The Board of Directors have failed to present any expense report or accounting despite numerous requests from Lewis.

67.     Despite repeated demands for access to the Books and Records, Lewis was never granted access to the Company's Books and Records.

### 3.     Defendants' Payment of Inflated Audit Fees

68.     The Company currently pays a significant amount of money in audit fees each year. After learning of this expense through public filings, Lewis suggested that the Company change to an auditor who would charge half of the price that the Company was currently paying in audit fees.

69.     The new audit company however, required background checks on the management team of the Company prior to engagement. Upon information and belief, Mir caused the Company to refrain from switching auditors in an effort to avoid submitting to a background check.

### 4.     The Negligent Hiring of Defendant Mir

70.     Mir caused the Company to hire Christine Chansky as its Chief Medical Officer without any background check. After Chansky was hired, it was discovered that she had been previously arrested for writing false prescriptions for opioids.

71.     On January 27, 2017, Christine Chansky field suit in the United States District Court of the District of New Jersey against Calmare and Mir individually for violating the Dodd-Frank Wall Street Reform and Consumer Protection Act, the United States Fair Labor Standards Act, the New Jersey Wage and Hour Laws, the New Jersey Conscientious Employee Protection Act, as well as breach of contract and breach of the covenant of good faith and fair dealing. *See Chansky v. Calmare Therapeutics,, Inc. and Conrad F. Mir.*, No, 2-17-cv-000583-JMV-MF (DNJ 2017).

72.     For years, the Audit Chair of the Company was an individual who specialized in marketing and who was wholly unqualified to serve as an Audit Chair on the Board of a publicly traded Company.

73.     In addition, Mir caused the Company to hired an individual, who is upon information and belief a close and personal friend of Mir, whose employment with the Company was terminated shortly thereafter upon the employee being discovered smoking marijuana in the Company's bathroom.

### 5.     Defendants' Failure to Appoint Qualified Individuals to the Board of Directors

74.     As part of an effort to garnish a contract with the United States military for the Devices, Robert T. Conway ("Conway") and Steve Roerich ("Roerich"), who both had significant military backgrounds, were elected to the Board of Directors.

75.     Conway and Roerich were involved in significant discussions regarding the fact that the Company did not have the correct team in place to market and sell the Device, and that a change at the Chief Executive Officer level would be required in order for the Company to achieve any form of success.

76.     After serving on the Board of the Company for approximately one year, Conway and Roerich both resigned in January of 2017. Upon information and belief, their resignation was a result of the corporate malfeasance transgressed by the Individual Defendants.

77.     On January 19, 2017, Conway and Roerich both resigned from the Company's Board of Directors. On January 24, 2017. The Company's Board of Directors voted unanimously to reduce the number of board members from seven (7) to five (5).

78.     The Company did not issue a press release regarding the resignations of Roerich and Conway or the changes to the Board until February 23, 2017.

### 6.     Defendants' Improper Termination Of Ian Rhodes

79.     Ian Rhodes ("Rhodes") is the former Chief Financial Officer ("CFO") of Calmare.

80.     While Rhodes was acting as the CFO of Calmare, Defendant Mir prevented Rhodes from attending any Board Meetings, and instructed Rhodes not to contact other Board Members or shareholders of the Company.

81.     Whenever Rhodes approached Mir regarding the financial turmoil of the Company, and potential solutions, Rhodes was largely ignored, and instructed not to bring the issues or solutions to the attention to the remaining Board of Directors or Shareholders.

82.     Rhodes repeatedly approached Brennan regarding the financial turmoil of the Company, and concerns with Mir's performance and Chief Executive Officer. All of Rhodes' concerns were ignored by Brennan, and remained unacted upon.

83.     Upon information and belief, the Individual Defendants terminated Rhodes' position as Chief Financial Officer of Calmare in retaliation for Rhodes' opposing the Board's wasteful and improper actions.

### 7.     Defendants' Improper Termination Of Stan Yarbro

84.     Stan Yarbro ("Yarbro") was the former Chairman of the Company's Audit Committee.

85.     In 2016, Mir began soliciting the Board of Directors to cause the Company to enter into a contract with Mir as Chief Executive Officer of the Company.

86.     Yarbro, Conway, and Roerich opposed the Company entering into a contract with Mir after observing his performance as Chief Executive Officer.

87.     Despite such opposition Mir, Brennan, O'Connell and Howard, concertedly caused the Company to enter into a contract with Mir to the detriment of the Company, and Plaintiffs' interest therein.

88.     The Company holds regularly meetings of the Boards of Directors. Despite holding regular meetings and Plaintiffs' requests, the Company has never provided a single set of minutes from the meetings to Plaintiffs.

89.     In 2016, the Company was in dire need for an immediate infusion of cash due to mismanagement.

90.     Mir recommended that the Company enter into a series of toxic financing arrangements in order to cover immediate financial needs.

91.     Yarbro, as a Director and shareholder, opposed the Company entering into the toxic financing arrangements that would cause significant harm to the Company.

92.     In fact, Yarbro offered to invest more money into the Company in order to avoid entering into such toxic relationships, and the Board of Directors, to the detriment of the Company, refused Yarbro's offer.

93.     On March 18, 2017, Yarbro was removed as a Director of the Company by a majority vote of the Board at a special meeting of the Board of Directors. The stated reasons for such removal was that Yarbro allegedly violated his fiduciary duties to the Company or the Corporate Code of Conduct.

94.     The alleged vote of the Board of Directors that was held to remove Yarbro as a Director of the Company took place without Director Howard even receiving notice that a special meeting of the Board of Directors was called, let alone casting a vote.

95.     Upon information and belief, Yarbro's directorship was terminated by the Individual Defendants in retaliation for Yarbro's opposition and objection to the Individual Defendants' corporate malfeasance.

**D.      Defendant Calmare's Breach of the Consulting Agreements**

96.     On January 4, 2016, the Company and one hand, and Lewis Asset Management, entered into a consulting Agreement ("Consulting Agreement") pursuant to which Lewis would act as a consultant for the Company. In total, the Company and Lewis Asset Management entered  into three (3) consulting agreements, all containing the same or substantially similar terms (collectively, the "Consulting Agreements").

97.     Pursuant to Paragraph 3(a) of the Consulting Agreement, Plaintiffs are entitled to be paid a monthly retainer fee of $10,000 from the Company.

98.     To date, the Company has only paid one retainer fee to Plaintiffs in the amount of $10,000, despite its contractual obligations to pay Plaintiffs $10,000 each month.

99.     To date, the Company owes Plaintiffs a total of $170,000.00 in outstanding retainer fees.

**E.      The Company's False Representations In Public Filings**

100.    The Company has made representations in public filings with the SEC that, upon information and belief, were knowingly false when made.

101.    In a press release dated May 23, 2016, Mir stated that Calmare gained a $15 million general supply order contract for the Device with the United States Government. Upon information and belief, such representation was knowingly false when made.

102.    On June 26, 2016, Calmare filed a Form 8-K with the SEC stating that it was awarded a material contract with the United State Government.

103.    This Form 8-K was signed by Mir.

104.    The Company has not received any revenue associated with any contract or relationship with the United States Government.

105.    If Calmare subsequently lost the alleged contract with the United States Government, it has failed to report such loss on a Form 8-K as required by the United States Securities Laws, including the Exchange Act.

106.    The Company has been consistently late in filing the required corporate forms with the SEC and has failed to account for fees associated with such filings appropriately.

107.    On March 31, 2017, the Company filed a Form 12b-25 Notification of Late Filing with the SEC. The filing explains that the Company was unable to file its Annual Form 10-K for the year ended December 31, 2016, by the prescribed filing date of March 31, 2017, due to delays in reviewing financial statements. The filing further states that the Company anticipates that it will file the Annual Report no later than the fifteenth calendar day following the prescribed filing date.

108.    Mir signed the Notification of Late Filing.

109.    To date, 68 calendar days following the prescribed filing date, the Company has failed to file its Annual Form 10-K for the year ended in December 31, 2016.

**F.    Defendants' Scienter**

110.    The Individual Defendants, by reason of their direct and substantial management positions and responsibilities during the time relevant to this Complaint, were "controlling persons" of Calmare within the meaning of Section 20 of the Exchange Act and possessed the power and influence to control Calmare and exercised such control to cause the Company to engage in the violations and improper practices complained of herein. Because of their positions as Directors of Calmare, each had non-public information about the ongoing financial status and contractual relationships of Calmare, which were misrepresented and concealed, as set forth herein.

111.    Defendants had a duty to promptly disseminate truthful and accurate information with respect to Calmare and to promptly correct any public statements issued by or on behalf of Calmare, which had become false or misleading. As detailed herein, Defendants failed to comply with these obligations.

112.    Defendants knew or recklessly disregarded the fact that the misleading statements and omissions complained of herein would adversely affect the integrity of the market for Calmare's securities and would cause the price of Calmare's securities to become artificially inflated. Defendants acted knowingly, or in such a reckless manner as to constitute fraud and deceit upon Plaintiffs.

113.    For example, Mir signed a Form 8-k representing that the Company was awarded a material contract with the United States Government. As no revenue in association with such contract has materialized to date, either the Company lost the contract, or the statement was

knowingly false when made. If the Company did lose the contract, Defendants have failed to file a statement updating such material information.

114.    Likewise, Mir signed a Notification of Late Filing that stated that the Company would be filing its Form 10-K for the year ended December 31, 2016 no later than April 15, 2017. To date, the Company has filed to file its Annul Form 10-K.

      **G.**    **Demand Futility**

          **1.**    **The Board's Refusal to Respond to Lewis**

115.    Plaintiff has consistently approached the Board of Directors, and specifically Brennan, regarding issues with how the Company was being run and specifically, with Mir's performance as Chief Executive Officer.

116.    Neither the Board of Directors, nor the Chairman of the Board, ever took any action in response to Plaintiff's requests.

117.    On September 28, 2016, Lewis emailed Brennan, the Chairman of the Board of Directors, requesting a meeting in order to discuss the current issues that Lewis was observing within the Company.

118.    On October 6, 2016, Lewis met with Brennan regarding the concerns that he had with the manner in which Defendant Mir was running the Company.

119.    Defendant Brennan was largely unresponsive to Plaintiff's concerns and requests for information, and took no action to remedy any of the issues Plaintiff brought to his attention.

120.    On January 5, 2017, Lewis again emailed Brennan requesting that Brennan meet with a potential Chief Executive Officer to bring into the Company in order to remedy the situation.

121.    Rather than discuss the suggestion with one of the Company's largest investors, or determine what action would be in the best interest of the Company, Brennan effectively shut Plaintiff out of Company communications.

122.    Accordingly, any additional demand upon the Board to initiate legal action would be futile.

**2.      Demand would be Futile Because Of Directors' Self-Interest**

123.    All of the individual Defendants were on the Board of Directors during the actions complained of herein.

124.    The Individual Defendants constituted a majority of Calmare's Board of Directors during the actions complained of herein.

125.    The Individual Defendants have engaged in significant corporate malfeasance with respect to the Company, including having needlessly stripped the Company of its resources and exposed the Company, and Plaintiffs' valuable interest in the Company, to severe harm, all to the detriment of Plaintiffs.

126.    Brennan, the current Chairman of the Board of the Company, has invested approximately two million dollars in the Company, pursuant to which he holds liens on the equipment owned by the Company, the Company's only valuable asset, and collects 18% interest.

127.    Brennan mandated that he be appointed Chairman of the Board of the Company upon the making of such investment.

128.    The loan arrangement with Brennan, the Chairman of the Board of the Company, is clearly a self-interested transaction. The Board of Directors, to the detriment of the Company, and Plaintiffs' interest therein, ratified such transaction.

19

129.    The Company, and the Individual Defendants, took no action to search for alternative funding for the Company from any source apart from Brennan himself that may have been more favorable to the Company and in the Company's best interest.

130.    Carl O'Connell was the Chief Executive Officer of the Company prior to Mir. O'Connell stepped down as Chief Executive Officer of the Company, and recommended Mir as a replacement, without conducting any due diligence, including a background check, and without searching for any other qualified candidates to fill the position. The Board accepted O'Connell's recommendation without searching for any other qualified candidates, or completing any due diligence regarding the hiring of Mir.

131.    Howard is the former Chairman of the Board of the Company.

132.    Accordingly, any additional demand on Calmare's Board would be futile because the Individual Defendants were self-interested in the transactions complained of herein.

## INDIVIDUAL CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Fiduciary Duty Against the Individual Defendants)**

133.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 132 of this Complaint as if fully set forth herein.

134.    As Directors, Chairman of the Board of Directors of the Company and as Chief Executive of the Company, the Individual Defendants owed fiduciary duties to Plaintiffs, as shareholders in the Company.

135.    The Individual Defendants intentionally breached their fiduciary duties to Plaintiffs by, inter alia: failing and refusing to perform their responsibilities and duties in good faith to the detriment to the Company, and Plaintiffs' interest therein; intentionally interfering with and jeopardizing Plaintiffs' relationships with other shareholders and Directors of the

Company, to the detriment of the Company, and Plaintiffs' interest therein; failing to diligently, carefully and honestly administer the affairs of the Company; engaging in corporate waste; squandering assets of the Company; and knowingly and fraudulently enriching themselves by unlawfully using the Company's assets to reimburse their personal expenses, wasting the Company's assets, at the expense of the Company and Plaintiffs' valuable interest therein.

136.    The Individual Defendants acted in directed contravention of the undivided duty of loyalty, care and trust, which as fiduciaries, they owed to Plaintiffs.

137.    The Individual Defendants have engaged in self-dealing and failed to act in good faith toward the Company and Plaintiffs by causing the Company to enter into agreements which were not in the best interest of the Company and from which the Individual Defendants personally profited.

138.    As a direct and proximate result of the Individual Defendants' wrongful conduct and breach of fiduciary duty, Plaintiffs have been damaged in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Fraud in the Sale of Securities in Violation of 15 U.S.C. § 78j(b) Against All Defendants)

139.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 138 of this Complaint as if fully set forth herein.

140.    Section 10(b) of the Exchange Act, and Exchange Act Rule 10(b)-5 promulgated thereunder, prohibits manipulative or deceptive practices in connection with the purchase or sale of any security.  Plaintiffs' Calmare stock is deemed a "security" within the meaning of federal law.

141.     Defendants knowingly and/or recklessly made and/or disseminated materially false and misleading statements, and omitted material information concerning the creation of the financial position and contractual relationships of Calmare.

142.     Defendants intentionally and/or recklessly made such materially false and misleading statements to increase the Calmare stock price and to induce investors such as Plaintiffs to purchase Calmare stock.

143.     Defendants thereby violated Exchange Act Rule 10(b)-5 in that they:

    i.   Employed devices, schemes and artifices to defraud;

    ii.  Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    iii. Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with the purchase or sale of stock.

144.     Plaintiffs reasonably relied to their detriment on such materially false and misleading statements when they invested in the Company.

145.     Had Defendants not made false and misleading statements, Plaintiffs would not have purchased Calmare stock.

146.     As a result of Plaintiffs' reasonable reliance on Defendants' materially false and misleading statements, Plaintiffs have suffered substantial financial loss in an amount to be determined at trial.  The acts of Defendants were willful, wanton and malicious, and justify an award of punitive damages in an amount to be determined at trial, but in no event less than $20,000,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of Exchange Act Section 20(a) Against All Individual Defendants)

147.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 146 of this Complaint as if fully set forth herein.

148.    The Individual Defendants acted as controlling persons of Calmare within the meaning of Exchange Act Section 20(a) as alleged herein.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the Company's plans and implementation thereof, each had the power to influence and control and did influence and control, directly or indirectly, the decision-making process of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.  Each Individual Defendant was provided with or had unlimited access to copies of Calmare's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause of statements to be corrected.

149.    In particular, Defendants had direct and supervisory involvement in the day-to-day operations of Calmare and therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

150.    By virtue of their positions as controlling persons, each Individual Defendant liable pursuant to Exchange Act Section 20(a).  As a direct and proximate result of the wrongful conduct, Plaintiffs suffered damages in connection with his purchase of Calmare securities.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Conversion Against All Defendants)

151.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 150 of this Complaint as if fully set forth herein.

152.    To date, and despite requests to do so, Defendants have failed to return any of Plaintiffs' property in their possession, custody, or control.

153.    Plaintiffs are the rightful owners of all funds invested in the Company and misappropriated by Defendants (the "Property").

154.    At all times relevant hereto, Defendants converted the Property belonging to Plaintiffs for their own unlawful use and benefits.

155.    Defendants' unauthorized and improper conduct has deprived Plaintiffs of their Property, thereby wrongfully excluding Plaintiffs from exercising their right of ownership, possession and control over the Property.

156.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract Against Defendant Calmare)

157.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 156 of this Complaint as if fully set forth herein.

158.    Plaintiff and Calmare entered into the Consulting Agreements, which were supported by fair and adequate consideration and constitutes a valid and binding obligation between the parties.

159.    Calmare breached the Consulting Agreements by, inter alia: failing to cause to be paid the monthly retainer fee of $10,000.00 due and owing to Plaintiff.

160.   Plaintiff has fully performed its contractual obligations to Defendant Calmare and satisfied all conditions precedent, if any, to Plaintiff's right to recover under the Consulting Agreements.

161.   As a direct and proximate cause of Calmare's breach of the Consulting Agreements, Plaintiff has been damaged in an amount to be determined at trial.

162.   Additionally, Calmare's breach of the Consulting Agreement was intentional, malicious, wanton and done with reckless indifference to Plaintiff's interest, thereby entitled Plaintiff to recover punitive damages, attorney's fees, and costs.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Breach of the Covenant of Good Faith and Fair Dealing Against Defendant Calmare)**

163.   Plaintiffs incorporate the allegations contained in Paragraphs 1 through 162 of this Complaint as if fully set forth herein.

164.   There is an implied covenant that Calmare will deal fairly and in good faith with Plaintiff.

165.   Calmare has, through its conduct in connection with the Consulting Agreements, violated its obligations to act in good faith, and to deal fairly with Plaintiff, obligations which are implied in law.

166.   As a direct and proximate cause of Calmare's breach of the implied covenant of good faith and fair dealing, Plaintiff has been substantially injured in an amount to be determined at trial.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Accounting Against All Defendants)**

167.   Plaintiffs incorporate the allegations contained in Paragraphs 1 through 166 of this Complaint as if fully set forth herein.

168.   Defendants owe contractual, statutory and fiduciary duties to Plaintiffs including the duty to allow Plaintiffs to conduct an accounting.

169.   The Individual Defendants, at all relevant times, owed Plaintiffs fiduciary duties to act in good faith and to diligently and fairly administer the affairs of the Company.

170.   In violation and in breach of their contractual, statutory and fiduciary duties owed to Plaintiff, the Individual Defendants, in concert with the Company, failed to diligently, carefully and honestly administer the affairs of the Company, engaged in corporate waste, squandered assets of the Company, and failed to faithfully perform their fiduciary duties as Directors, Chairman of the Board of Director and Chief Executive Officers of the Company by, inter alia: knowingly and fraudulently enriching themselves by unlawfully personally profiting at the Company's expense and wasting Company assets, at the expense of Plaintiffs.

171.   By reason of the foregoing, Plaintiffs have been damaged in an amount that is unknown, and cannot be ascertained except by a complete accounting herein.

172.   Defendants have at all times refused to allow Plaintiffs access to Company books and records that would account for the acts complained of herein.

173.   No adequate remedy exists at law for the equitable relief sought herein.

174.   Based on above, Plaintiffs respectfully request Judgment directing Defendants to account to Plaintiffs for all profits, directly or indirectly, losses, and distributions of the Company since its inception and awarding judgment against Defendants in an amount to be determined at trial.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(New York Business Corporation Law ("BCL") § 720 – Officer and Director Misconduct)**

175.   Plaintiffs incorporate the allegations contained in Paragraphs 1 through 174 of this Complaint as if fully set forth herein.

176.    The Individual Defendants have violated BCL § 720 by violating their duties in the management and disposition of corporate assets and by transferring to themselves and/or entities under their control, corporate assets, and an accounting should be made therefor.

177.    This conduct by the Individual Defendants constitutes a gross deviation from their duties with respect to management and disposition of company assets that were committed to their charge.

178.    By reason of the foregoing, the assets must be set aside, and Defendants must be enjoined from dissipating any additional corporate assets.

## REQUEST FOR RELIEF

WHEREFORE, the plaintiffs, William Austin Lewis, IV, Lewis Asset Management, Lewis Opportunity Fund, LP, and William A. Lewis Defined Pension Plan and Trust request an order granting the following relief:

1.  Compensatory damages in an amount to be determined at trial;

2.  Pre and post judgment interest;

3.  Punitive damages against Defendants in an amount to be determined at trial;

4.  Directing immediate access for Plaintiffs or any attorney or accountant representing them to all of the Company's books and records;

5.  Attorney's fees, costs and disbursements including expert fees; and

6.  Such other legal or equitable relief as the Court may deem just and proper.

Dated: New York, New York
June 7, 2017

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: _____
Daniel A. Schnapp
Ernest Edward Badway
Catherine A. Savio
101 Park Avenue, 16th Floor
New York, New York 10178
(212) 878-7900
(212) 692-0940 (fax)
*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all issues properly so tried.

Dated:  New York, New York
         June 7, 2017

                                        **FOX ROTHSCHILD LLP**


                                        By: _____
                                             Daniel A. Schnapp
                                             Ernest Edward Badway
                                             Catherine A. Savio
                                             101 Park Avenue, 16th Floor
                                             New York, New York 10178
                                             (212) 878-7900
                                             (212) 692-0940 (fax)
                                             *Attorneys for Plaintiffs*